# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PATRICK RYAN BOWDEN,**<br>    Plaintiff,<br><br>v.<br><br>**KILOLO KIJIKAZI,**<br>**Acting Commissioner**<br>**of the Social Security**<br>**Administration,**<br>    Defendant. | Case No. 4:20-cv-1302-CLM |

## MEMORANDUM OPINION

Patrick Ryan Bowden seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Bowden's application in an opinion written by an Administrative Law Judge ("ALJ").

Bowden argues: (1) that the ALJ failed to afford the proper weight to the opinions of Dr. June Nichols, a consultative psychologist; (2) that the ALJ impermissibly rejected Dr. Nichols' opinions because Bowden's attorney paid for her psychological evaluation; and (3) that substantial evidence doesn't support the finding that Bowden can perform a full range of work at all exertional levels.

As detailed below, the court agrees with Bowden that the ALJ didn't adequately explain his reasons for affording Dr. Nichols' opinions little weight. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for further proceedings.

I.   **STATEMENT OF THE CASE**

   A.   **Bowden's Disability, as told to the ALJ**

Bowden was 29 when he filed his application for benefits. (R. 158). Bowden has a high school education, but no past relevant work. (R. 400).

In his disability report, Bowden alleged that he couldn't work because he suffers from high blood pressure, PTSD, Asperger's syndrome, bipolar depression, agoraphobia, and Von Willebrand's Disorder. (R. 183). At the ALJ hearing, Bowden testified that he suffers from several mental impairments. According to Bowden, he often gets into conflicts with both strangers and people who are close to him. (R. 413). When Bowden leaves the house to go to the store or run errands, he has panic attacks. (R. 415). So at least one of Bowden's mental health providers has diagnosed him with panic disorder with agoraphobia. (R. 416). Though Bowden sees a therapist at CED, he's not on any medication because he has a blood disorder that prevents his blood from clotting normally. (R. 413–14).

Bowden lives with his mom who has heart problems. (R. 424). The chores Bowden is responsible for include washing the dishes and cutting the grass on their three and a quarter acres. (R. 424–25).

Bowden used to travel from Boaz to Huntsville to play Dungeons and Dragons. (R. 182, 423). But he migrated to a smaller online Dungeons and Dragons group after his group got too large. (R. 423). With the online Dungeons and Dragons group, Bowden was running the games online. (*Id.*). Though Bowden no longer plays Dungeons and Dragons, he still plays first person video games to help himself escape. (*Id.*).

   B.   **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Bowden's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1-4).

Bowden applied for SSI in April 2015, claiming that he could not work because of various ailments, including high blood pressure, PTSD, Asperger's syndrome, bipolar disorder, agoraphobia, and Von Willebrand's disorder. Bowden's claim for benefits was denied at the initial level and then again by an ALJ.

After the SSA's Appeals Council denied Bowden's request for review, Bowden appealed to this court. The court reversed the Commissioner's denial of benefits and remanded the case to the SSA. On remand, the ALJ conducted a hearing and ultimately issued a second decision finding Bowden not disabled.

At Step 1, the ALJ determined that Bowden was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Bowden suffered from the following severe impairments: depression, panic disorder with agoraphobia, bipolar disorder, learning disorder, borderline personality disorder, attention deficit hyperactivity disorder, and Asperger's disorder.

At Step 3, the ALJ found that none of Bowden's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Bowden's residual functional capacity.

The ALJ determined that Bowden had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Bowden can understand, remember, and carry out simple instructions.

- Bowden's decision-making should be occasional in nature.

- Bowden's interaction with the public should be infrequent, or less than occasional.

- Bowden's interaction with coworkers and supervisors should also be occasional.

- If Bowden is afforded mid-morning, lunch, and mid-afternoon breaks, he can sustain those activities for two-hour periods and therefore, sustain them over an eight-hour day.

At Step 4, the ALJ found that Bowden had no past relevant work. At Step 5, the ALJ determined that Bowden could perform jobs, such as packer/hand packager, kitchen helper, and warehouse worker, that exist in significant numbers in the national economy and thus Bowden was not disabled under the Social Security Act.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.  LEGAL ANALYSIS

Bowden makes three arguments for why the ALJ erred in finding him not disabled: (1) the ALJ failed to adequately evaluate Dr. Nichols' opinion; (2) the ALJ impermissibly discounted Dr. Nichols' opinions because Bowden's attorney paid for her evaluation; and (3) substantial evidence doesn't support the ALJ's finding that Bowden has no exertional limitations.[1]

The court agrees that the ALJ failed to adequately explain why he discounted Dr. Nichols' opinion. So the court needn't address Bowden's other arguments for reversal. Before explaining how the ALJ erred, the court will recap Dr. Nichols' opinion and the ALJ's reasons for assigning the opinion little weight.

1. <u>Background</u>: In May 2020, Bowden had a consultative psychological evaluation with Dr. June Nichols. In the summary section of her psychological evaluation, Dr. Nichols stated that Bowden can understand, remember, and carry out very short and simple instructions. (R. 878). But she noted that Bowden would have issues maintaining attention, concentration, or pace for at least two hours. (*Id.*). Dr. Nichols also explained that Bowden cannot: (1) perform activities within a schedule and be punctual within customary tolerances; (2) sustain an ordinary routine without special supervision; (3) adjust to routine and infrequent work changes; (4) interact with supervisors or coworkers; and (5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*). According to Dr. Nichols, Bowden would also likely be off-task 50 to 60% of the time and fail to report to work 20 + days in a 30-day period. (*Id.*).

Dr. Nichols also filled out a mental health source statement and mental health questionnaires on Bowden's behalf. (R. 856–58). The opinions expressed in Dr. Nichols' mental health source statement match

---

[1] Some issues mentioned in the Errors of Law section of Bowden's briefs don't match the issues discussed in the Argument section. These arguments are the ones made in the Argument section of the brief.

those expressed in the psychological evaluation. (*Compare* R. 856 *with* R. 878). As for the mental health questionnaires, Dr. Nichols said that Bowden suffered from several symptoms of depression, including marked restrictions of daily activity; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation. (R. 857). Dr. Nichols also stated that Bowden suffered from several symptoms of generalized anxiety, including: (1) a persistent and irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; and (2) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom on the average of at least once a week. (*Id.*). Finally, Dr. Nichols responded that Bowden suffered from a neurodevelopmental disorder that caused (1) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; plus (2) hyperactive and impulsive behaviors. (R. 858).

The ALJ afforded Dr. Nichols' opinion little weight, finding that it was "wholly inconsistent with [Bowden's] current abilities, testimony, interests, and medical evidence." (R. 400). The ALJ also found that Dr. Nichols' statement that Bowden "cannot maintain concentration, attention, or pace for two hours is completely inconsistent with [Bowden's] own statements and testimony about the amount of time he spends reading and playing games." (R. 399). As the ALJ explained, Bowden stated that he was running Dungeons and Dragons for others and only stopped because the other players needed to. (*Id.*). The ALJ found that Bowden's "abilities to play a multitude of online games and to set up and run the Dungeons and Dragons games also demonstrate that the claimant can understand, remember, and carry out at least simple tasks." (*Id.*). The ALJ explained that "[t]his ability is also demonstrated by [Bowden's] ability to clean up after himself, to mow the lawn, and to cook." (*Id.*).

2. <u>ALJ's error</u>: Under the regulations that apply to Bowden's claim for benefits, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). While an ALJ needn't defer to the opinions of a one-time examiner, like Dr. Nichols, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), the ALJ must "state with at least some measure of clarity the grounds" for assigning a particular weight to the consultative examiner's opinion, *Winschel*, 631 F.3d at 1179. So an ALJ errs when he fails to provide a reasonable basis for discounting the opinion of a consultative examiner. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108–09 (11th Cir. 2021).

Here, the ALJ gave specific reasons, supported by substantial evidence, for why he discounted Dr. Nichols' statement that Bowden "cannot maintain concentration, attention, or pace for two hours." (R. 399). As the ALJ explained, Bowden testified that he's an active Dungeons and Dragons player who ran online games for a while. (R. 423). And Bowden says he spends around three or four hours a day playing video games. (*Id.*). The ALJ also correctly noted that Bowden's reported daily activities suggested that he could carry out at least simple tasks. (R. 398–99). So the ALJ provided "some measure of clarity" for why he rejected Dr. Nichols' statement that Bowden "cannot maintain concentration, attention, or pace for two hours."

But the ALJ's only reason for giving Dr. Nichols' other statements little weight was that her opinion was "wholly inconsistent with the claimant's current abilities, testimony, interests, and medical evidence." (R. 400). The ALJ didn't explain why these other statements contradicted the record evidence. Nor did the ALJ cite the specific portions of the record that he thought contradicted Dr. Nichols' statements. Without more explanation from the ALJ about his thought process, the court cannot determine whether the ALJ's decision to assign the opinion little weight was "rational and supported by substantial evidence." *See Winschel*, 631 F.3d at 1179. Indeed, it would be inappropriate for the court to guess about which parts of the record the ALJ thought supported his decision to

give Dr. Nichols' opinion little weight or why the ALJ found the opinion inconsistent with the rest of the record evidence. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (This court cannot "affirm simply because some rationale might have supported the ALJ's conclusion."). So the court determines that it must remand this case for the ALJ to re-evaluate Dr. Nichols' opinion and more fully explain the weight he assigns the opinion.[2]

On remand, the ALJ should specifically address Dr. Nichols' statements that Bowden: (1) cannot perform activities with a schedule and be punctual with customary tolerances; (2) cannot sustain an ordinary routine without special supervision; (3) cannot adjust to routine and infrequent work changes; (4) cannot interact with supervisors and/or co-workers; and (5) cannot maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. The ALJ should also explain whether the record contradicts Dr. Nichols' determination that Bowden would be off task 50 to 60% of the time in an 8-hour day and would miss 20 or more days in a 30-day period. Finally, the ALJ's new hearing decision should discuss the depressive syndrome, generalized anxiety, and neurodevelopmental disorder symptoms noted in Dr. Nichols' mental health questionnaire and explain whether the record supports Dr. Nichols' finding that Bowden exhibits these symptoms. In remanding this case, the court isn't holding that the ALJ must afford Dr. Nichols' opinion any particular weight. The court is instead merely requiring the ALJ to articulate adequate reasons for the weight he assigns the opinions expressed in Dr. Nichols' psychological evaluation, mental health source statement, and mental health questionnaires.

---

[2] The court needn't address Bowden's argument that the real reason the ALJ discounted Dr. Nichols' opinion was that his attorney hired Dr. Nichols other than to note that "[t]he fact that [Dr. Nichols] was a one-time consultative examiner retained by the claimant rather than the Commissioner is not, standing alone, a valid basis for rejecting [her] medical opinion." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. 2013).

## IV. CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess Dr. Nichols' opinion. The court will enter a separate final order that closes this case.

**Done** on August 17, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE